Please be seated. Thank you. Madam Clerk, please call the next case. Clerk's Call, Court Number 5-5, Illinois School of Health v. Angela Atkins. May it please the Court, Counsel, Natalie Romo on behalf of the Defendant, Illinois School of Health. We request that the decision of the Circuit Court reversing the decision of the Commission be reversed. Essentially, the Respondent is asking that this Court find that the Commission decision is not against the manifest weight of the evidence. We've discussed today, and it's well known, it's within the province of the Commission to assess the credibility of the witnesses, resolve conflict, assign weight to evidence, and draw reasonable inference from that evidence. The Circuit Court substituted their own judgment for that of the Commission, and that's the incorrect standard. The Commission found that the plaintiff only sustained a calf injury, and that's supported by the evidence on the record. Is that primarily due to the conflicts, allegedly, between the claimant's statements to advocate and what she told the doctors? Is that part of it? Yes, that is part of it. And I think if you look at the entire record, there were also issues with her credibility throughout the case, whether she stepped in the pothole or not. And the Commission reviewed the entire record, took that into account, as well as the medical records, which indicate on her first visit that, quote, patient complains of pain in the right leg due to tripping on sidewalk, end quote. Further down in the record, she says pain in right calf after stepping off curb. So on her first visit, she's only complaining of calf pain. The doctor examines her right ankle and foot and knee, and they only take x-rays of the calf and of the ankle. She's only diagnosed at that point with a calf strain. So the doctor examined her knee and didn't find anything that was wrong with it, and there's no diagnosis for that. And that's what the Commission relied on. Two days later, she goes back to the emergency room, and she says that the night before, she was in her kitchen and her knee dislocated, and it took her 20 minutes to pop it back in. At that time, then there's knee effusion. Then there are physical findings. And the Commission looked at that as well and found that she did not sustain a right knee injury on September 1st of 2009 with plaintiff's employment. There were credibility issues as discussed. The Commission took that into account. The circuit court judge said that there was an overwhelming evidence in quantity and quality that she sustained an injury to her right knee. And that's certainly not correct. The Commission outlined in their decision as to why this petitioner only sustained an injury to her calf. And that's that first visit, and it's the entire testimony of all of the witnesses. The witness that said, yes, I examined her leg when she came back, and she said, I look at her leg. She didn't mention the knee. So based upon these two facts of what's on the record, the Commission looking at the petitioner's credibility and testimony as well as the other witnesses, we ask that the Commission decision be affirmed. Thank you, Counsel. Counsel, you may respond. Good morning, Justices and Counsel. May it please the Court. My name is Carl Salvato. I am the attorney for Ms. Aldridge of the law firm of Salvato & O'Toole. I've had the distinct pleasure of representing personal injury and workers' compensation clients for the last 22 years. And interestingly enough, after handling thousands of cases over the last 22 years, certain factual things just seem to stick out in your mind as a lawyer. I obviously haven't been doing this as long as all of your honors, but I remember meeting with Ms. Aldridge early on in this case in September of 09. And I told her, I said, Angela, you know, they very well may take your case and try to create new law here in Illinois on the issue of whether or not this was a voluntary recreational activity. And I'm warning you of that right from the get-go. Respondent's insurance carrier, sure enough, while investigating the claim, paid her benefits for roughly six weeks from September until mid-October of 2009. And then mid-October of 2009, sure enough, I receive a letter that says your client was not in the course of her employment. When her alleged injury occurred, she was participating in a voluntary recreational activity. So for the last three years and three months, it has been, in essence, the respondent's position that this case was not a compensable injury. Now, here we are three years and three months later, and we're now looking at what is, in essence, legal splitting of hairs. The arbitrator in this case, arbitrator Drutilla, heard nearly two days of testimony. The respondents trampled in four or five witnesses. And my recollection of that trial was that there was nothing called into question with respect to Ms. Aldridge's credibility. He ruled in her favor. Not only did he rule in her favor with respect to the ankle and the calf, but he also said that the patella injuries were directly caused by the injury of September 1st of 2009. He then went ahead to order the respondent to pay for the prospective medical care that Dr. Preston-Wolwin recommended, which was a patella follow-up. And at the time, the only medical evidence presented to the court was presented on behalf of the petitioner. And Dr. Wolwin, at that time, causally related the knee to the incident of September 1st of 2009. There was no other medical testimony presented as the causal connection. Not only did she see Dr. Wolwin, but Dr. Herber, Dr. Fuentes, also a board-certified orthopedic surgeon, also saw Dr. Preston-Wolwin. And Dr. Herber also causally related it to the injury. If you go back to the first visit, when she first saw the doctors at Mercy Hospital, Bridgeport Medical Clinic, after she drove herself there after the incident, she complained of injuries to her right calf, foot, and right knee. She then goes to Mercy Hospital two days later, complaining of the day before, her having some instability in her knee, which was caused by the knee injury. Which makes perfect sense, because sure enough, after the MRI is ordered, not only does she have a horizontal tear of her medial meniscus, but she also was diagnosed with a patella dislocation by Dr. Herber. She was diagnosed with a patella dislocation by Dr. Fuentes, and again by Dr. Preston-Wolwin, who is a board-certified orthopedic surgeon, and causally related it to this accident. Counsel, I think one of the things she's arguing maybe bears, obviously, your comment. Closing counsel seems to be arguing, you know, that's all well and good, but when she showed up at Advocates on September 1st, following the work accident, she did not complain of right knee pain and right knee problems. So she's saying, well, the commission seemed to latch onto that and find there was some inconsistency in her reporting of her injury.  Well, with all due respect, Your Honor, on September 1st, she went to Advocate Bridgeport Medical with complaints of right calf, right foot, and right knee pain. Generally, right leg pain. And, you know, as we all know... You're saying right leg encompasses knee? Yes. In essence, right leg encompasses the knee. As, you know, all of the permanency decisions with respect to knee are permanency decisions with respect to permanent injury. So she's saying, well, the commission seemed to latch onto that and find there was some inconsistency in her reporting of her injury. She then gives a very consistent history to all of her doctors of having her left foot hit into a pothole on the sidewalk, and then her falling off of which, if Your Honor, I don't know if you have the pictures that were submitted to Arbitrator Jutilla, was roughly two feet in height. I mean, this wasn't just a lady who hit her foot into the curb and fell off the sidewalk. It was a woman who fell off the sidewalk and hit her right foot into a pothole on the sidewalk, and then her left foot hit her right foot onto her right side. And that was an important factor when Arbitrator Jutilla was weighing all of the evidence and heard the trial testimony. With all due respect to counsel, I mean, for three years we've been arguing whether or not this was a compensable injury. And to say we have benefits in three years over a completely issue which was not even before the review panel, it seems to be absurd to me. The entire defense in this case all along was that it was not a compensable case. She was acting on her own, doing a voluntary recreational activity. The opinion on review seemed to, in essence, split the baby and say it is a compensable case, but we don't think the need is related to the injury. It's not related because, you know, she made complaints on September 3rd of her knee giving out. Well, of course it gave out because she had a patellar dislocation. She had a patellar dislocation from day one, and Bridgeport Medical Clinic, quite honestly, didn't do the proper workup. The only medical evidence you have in this case is from, and with respect to causal connection in terms of opinions, is Dr. Preston Mullen. I don't know if any of you know who Dr. Preston Mullen is. He's a very well-known doctor. He's an orthopedic surgeon here in the city of Chicago. He's the U.S. soccer team's doctor, the DePaul team doctor. And when she was given the opportunity to have a second opinion, she immediately went to a doctor of that quality. Dr. Mullen was of the firm opinion after, you know, not only reviewing the MRI, he ordered a CAT scan of his own, that this was all causally related to the September 1st incident. I just find it strange, too, that we're here three years and three months later, and we're now arguing about a part of the case, which was never really even their issue on appeal to the review court at the Industrial Commission. It was never really their issue on appeal to the circuit court. And then Judge Lopez-Sapero reviewed all of the evidence. There was a voluminous amount of medical records tendered as part of the record. And if you look at his order, he said there was a large amount of medical records tendered. There was an overwhelming amount of not only quality, but quantity evidence in favor of the petitioner that the knee was causally related to this accident. Nothing about Judge Sapero's ruling is improper. He looked at all of the evidence as a whole, as the Jacobson court suggests you do. And he ruled that the knee was causally related as well as causally related to the accident. He also ruled that the accident was not a voluntary recreational activity. I believe arbitrator or Judge Sapero's ruling was proper and should be affirmed. Thank you, Your Honor. Just a few brief points, Your Honor. Respondent's argument was that the accident was not compensable. The Commission found that it was. Now it's their determination based upon the medical evidence, her testimony, and all of the testimony on the record as to what type of injury she sustained. And they found that she didn't sustain any injury. What about his argument that has some superficial appeal that somebody falls, their leg's bothering them, they say their leg is bothering them, their calf, their knee, I mean, you know, they're in distress and their leg's bothering them. So why is it unusual that she wouldn't hone in on the specific part of the leg if she's saying her right leg hurts? Well, she indicated that her right calf hurt when she first saw the doctor. She also did state that she had right leg pain. They examined her when she went to the first clinic. And they examined her entire leg. They also examined her foot. Based upon that examination, they only took x-rays of her ankle and they only took x-rays of her foot. And the only diagnosis was that of a calf strain. So I don't think that the doctor needs to say she did not injure her knee, she only injured her calf. The doctor's saying she didn't injure her knee because the only thing I'm diagnosing her with is a calf strain. There weren't any physical findings of a knee injury until she went back on September 3rd of 2009. And that's after she said that her knee dislocated in the kitchen. To address counsel's issue about Dr. Rowland issuing a causal connection opinion, he did state that. But he stated that based upon what she told him. He didn't look at the September 1st of 2009 record. She went and told him on the first visit that she was stepping off of a curb and her knee dislocated and she felt a pop in her calf and her knee dislocated at the same time. That's what she told Dr. Rowland. That's why Dr. Rowland said that it was causally related. So that's an incorrect causal connection opinion based upon the facts that we have on the record and based upon everything that the commission reviewed. So when the commission reviewed everything in its entirety, they came to the decision and there is evidence on the record to support that with that September 1st office visit that she only sustained a calf strain at that time. So is it simply coincidental, I'll just throw this out as hypothetical, but this theory, she falls, clearly nobody disputes she falls, nobody disputes there's a leg injury, perhaps you're saying not the knee. So why does her knee give out coincidentally the next day if it's unrelated to the fall? Why did her knee give out as a child? Why did her knee give out, I believe in 2004 or 2005? I don't think that anything... Oh, there's evidence of a preexisting problem? Yes, there was. There was in 2005, she was seen because she was kicked repeatedly in the knee and it kept dislocating. I believe she was seen at Rush. She was kicked repeatedly in the knee? Yes, in 2005. She saw Dr. Verma who was at Rush and there's evidence on the record of that. She was seen at Northwestern in 2003 because her knee dislocated. She told one of the doctors that her knee popped out when she was a child doing gymnastics. Her knee pops out. There's nothing in the record indicating that her knee popped out because of her stepping off that curb. If you look at the first doctor's visit, they examined her knee. There was nothing wrong with it. There were no physical findings and there is no diagnosis. So we request that the Commission decision be held against manifest weight and that the Commission decision be affirmed. Thank you.